**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MARTINA H. C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 25-CV-479-MTS** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Martina H. C. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc.*

*Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On June 9, 2023, Plaintiff protectively filed an application for Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the Social Security Act. (R. 10, 236-37). She alleged an inability to work beginning on July 20, 2022, due to limitations resulting from systemic lupus erythematosus, rheumatoid arthritis, spondyloarthritis, bilateral sacroiliitis, asthma, sinus tachycardia, anemia B12 deficiency, insomnia, bipolar depression, and schizoaffective disorder. (R. 10, 307, 311). Plaintiff was thirty-nine years old at the time of the ALJ's decision. (R. 26, 48, 307). She has at least a high school education (plus some college) and past relevant work as a nurse assistant and a voucher clerk. (R. 26, 48, 63, 312).

Plaintiff's application was denied both initially and upon reconsideration. (R. 10, 105-08, 119-21). On October 10, 2024, ALJ James L. Bentley conducted an administrative hearing via

video. (R. 10, 43-68). After the administrative hearing, ALJ Bentley issued a decision on October 21, 2024, denying benefits and finding Plaintiff not disabled. (R. 10-35). The Appeals Council denied review on July 11, 2025. (R. 1-6). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since July 20, 2022, the alleged onset date. (R. 12). At step two, he found Plaintiff suffered from severe impairments of systemic lupus erythematosus, seronegative rheumatoid arthritis, degenerative disc disease of the lumbar spine and cervical spine, mild persistent asthma, obesity, major depressive disorder, anxiety disorder, autism spectrum disorder, and post-traumatic stress disorder. (R. 13). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 13-18). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [Plaintiff] is limited to occasional climbing of stairs and ramps, but is unable to climb ladders or scaffolding. She is limited to occasional stooping, kneeling, crouching, and crawling, and must avoid unprotected heights and dangerous machinery. She is limited to frequent handling and fingering bilaterally. She must avoid concentrated [] dust, fumes, and other pulmonary irritants. She is able to understand, remember, and apply simple instructions, make simple work-related decisions, and concentrate and persist for extended periods in order to complete simple work tasks with routine supervision. She is able to interact with and respond appropriately to others in a routine work setting incidental to the work being performed. However, she would need to avoid work-related interaction with the general public. She is able to adapt to a routine work setting where changes are infrequent, well-explained, and introduced gradually.

(R. 18).

At step four, the ALJ determined Plaintiff had past relevant work as a nurse assistant and a voucher clerk. (R. 26). Based on the testimony of a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of marker, collator operator, and router, all of which he found existed in significant numbers in the national economy. (R. 26-27, 63-66). As a result, the ALJ found Plaintiff had not been under a disability from July 20, 2022, through the date of decision. (R. 27).

**Errors Alleged for Review**

Plaintiff asserts three main errors in her challenge to the Commissioner's denial of benefits. (Docket No. 10 at 2). First, Plaintiff argues the ALJ erred by failing to reopen her prior applications for disability benefits. *Id.* at 2-8. Second, she contends the ALJ failed to find her migraine headaches and left shoulder degenerative joint disease were severe impairments and thereby omitted corresponding functional limitations in the RFC. *Id.* at 8-11. Third, Plaintiff asserts the ALJ did not properly evaluate her subjective statements. *Id.* at 11-14. Defendant maintains that the ALJ's RFC is supported by substantial evidence and that the issue of reopening Plaintiff's prior applications is not properly before the Court. (Docket No. 16 at 4-11).

**Reopening of Prior Applications**

Plaintiff previously filed applications for disability insurance benefits in June and September 2022, alleging a disability onset date of July 20, 2022, and asserting she was unable to work due to systemic lupus erythematosus, rheumatoid arthritis, schizoaffective disorder, and bipolar disorder. (R. 69-71, 289). The applications were denied at the initial determination level in July and November 2022, and Plaintiff did not appeal either application. (R. 69-70). Plaintiff filed the current application on June 9, 2023, again alleging a disability onset date of July 20, 2022, based upon the same conditions in her prior applications and the additional conditions of

spondyloarthritis, bilateral sacroiliitis, asthma, sinus tachycardia, anemia B12 deficiency, insomnia, and depression. (R. 77, 84, 311).

In his decision, the ALJ construed Plaintiff's allegation that her disability began on July 20, 2022, as "an implied request to reopen her prior Title II applications for a period of disability and disability insurance benefits[.]" (R. 10). He noted that both applications were "denied at the initial level of the disability application process on July 29 and November 1, 2022, respectively." *Id.* The ALJ then explicitly stated: "I do not find a basis for reopening the claimant's prior applications." *Id.* In support, he relied upon 20 C.F.R. § 404.988, while also noting that "Social Security Rule 91-5p was . . . considered and does not apply in this case." *Id.*

Plaintiff's argument regarding the reopening of her prior applications is two-fold. The Court addresses each contention in turn.

**A. Legal Standard for Reopening**

Plaintiff contends the ALJ applied the wrong legal standard when declining to reopen her prior applications. (Docket No. 10 at 3-4). She asserts that because her current application was filed within twelve months of her prior applications, the reopening of the prior applications falls under the "for any reason" standard for reopening. *Id.* at 3. Defendant counters that the ALJ's decision was discretionary; thus, when he explicitly determined reopening was unwarranted, his decision became unreviewable. (Docket No. 16 at 9-10).

The regulations provide that a determination or decision under Title II may be reopened within twelve months of the date of the notice of the initial determination "for any reason" and within four years for "good cause." 20 C.F.R. § 404.988(a), (b). However, the ALJ's "decision not to reopen a previously adjudicated claim for benefits is discretionary and, therefore, is not a final decision reviewable under 42 U.S.C. § 405(g)." *Brown v. Sullivan*, 912 F.2d 1194, 1196

(10th Cir. 1990); *see also* Program Operation Manual System ("POMS") DI § 27505.001(A)(1) ("Reopening within 12 months is not 'automatic.' A request to reopen within 12 months can be denied if there is no reason to revise the prior determination or decision."). Thus, the ALJ did not apply the wrong legal standard, but instead exercised his discretion and decided not to reopen Plaintiff's prior claims.

**B. *De Facto* Reopening**

Plaintiff also argues the ALJ's "substantive reexamination" of the prior application period "constitutes reopening as a matter of law." (Docket No. 10 at 4). She contends that the ALJ's reliance on evidence from the prior period and his finding that "the claimant has not been under a disability within the meaning of the Social Security Act from July 20, 2022, through the date of the decision," constituted a *de facto* reopening of the prior applications. *Id.* at 4-5, quoting R. 28. Plaintiff maintains that the time period used by the ALJ results in harmful error, as it creates a "structurally incoherent" decision by lumping distinct periods of her condition's severity into one continuous period when the ALJ should have analyzed the periods separately. *Id.* at 5-6. Defendant asserts the ALJ's examination of evidence from a prior adjudicated period did not reopen Plaintiff's prior applications. (Docket No. 16 at 10-11).

"[F]ederal courts [generally] do not have jurisdiction to review refusals . . . to reopen claims for disability benefits." *Devereaux v. Chater*, 78 F.3d 597, 1996 WL 98956, at *2 (10th Cir. Mar. 7, 1996), citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977). Exceptions to this general rule include: "(1) when the Commissioner's decision constitutes a *de facto* reopening of the earlier filed claim; and (2) when the claimant has a colorable constitutional claim based on the denial of benefits in the prior case." *Finan v. Barnhart*, 327 F.Supp.2d 1303, 1305 (D. Kan. 2004) (emphasis added). Here, Plaintiff has not raised a constitutional argument in support of reopening but instead

asserts that the ALJ's discussion of the evidence and use of her previous disability onset date of July 20, 2022, constitutes a *de facto* reopening of her prior applications.

In support of her argument, Plaintiff relies on *Taylor for Peck v. Heckler*, 738 F.2d 1112 (10th Cir. 1984). (*See* Docket No. 10 at 4) ("Under Tenth Circuit precedent, substantive reexamination of a prior period constitutes reopening as a matter of law, regardless of the label applied."). In *Taylor*, the Tenth Circuit determined that the case was subject to the "traditional" review, "*i.e.*, [the] determin[ation] whether the findings are supported by substantial evidence and . . . whether the decision was in accord with applicable law and regulations[,]" because the ALJ did not decline to reopen the prior case and had reconsidered the merits of the prior claim. 738 F.2d at 1114-1115. In this case, the ALJ's decision is easily distinguished from *Taylor* as the ALJ expressly denied Plaintiff's implied request to reopen her prior applications. (R. 10); *see also Cook v. Chater*, 85 F.3d 640, 1996 WL 223711, at *2 n.2 (10th Cir. May 3, 1996) ("The administrative law judge expressly refused to reopen the 1987 application. Such express refusal to reopen normally precludes a claim of de facto reopening by the administrative law judge and is also not reviewable by this court.") (citations omitted).

Moreover, while the ALJ utilized July 20, 2022, as the disability onset date and discussed evidence relevant to the prior applications, nothing indicates he intended to reopen the applications. *See, e.g.*, *Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir. 1986) (noting that a review of medical records from a time covered by the previous application "does not amount to the reconsideration 'on the merits' necessary to constitute a *de facto* reopening of the earlier application . . . and were simply preliminary facts required to access rationally the question at issue, *i.e.*, whether Rohrich was disabled at the time of the second application."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 n.8 (10th Cir. 2004) (noting that medical evidence dating "from

earlier, previously adjudicated periods . . . [is] nevertheless relevant to the claimant's medical history and should be considered by the ALJ" and rejecting the argument that examining that evidence somehow reopens a prior claim). Thus, such a review does not constitute the reopening of a prior claim, especially in light of the ALJ's explicit finding declining to reopen Plaintiff's prior applications. *See McDaniel v. Comm'r of Soc. Sec. Admin.*, No. CIV-16-493-KEW, 2018 WL 1532670, at *3 (E.D. Okla. Mar. 29, 2018) ("When the reopening of a prior application has been expressly denied, the mere reference to evidence from a prior claim has not been found to be a *de facto* reopening of the claim."), citing *Brown*, 912 F.2d at 1196.

**Consideration of Plaintiff's Migraine Headaches and Left Shoulder Impairments**

Plaintiff asserts the ALJ erred by failing to find her migraine headaches and left shoulder degenerative joint disease as severe impairments at step two. (Docket No. 10 at 8-9). Additionally, she argues the ALJ did not account for the impairments in the RFC, resulting in an RFC unsupported by substantial evidence. *Id.* at 10-11. Conversely, Defendant responds that the ALJ considered these non-severe impairments and accounted for their effects when assessing the RFC. (Docket No. 16 at 7-8).

Here, the ALJ expressly explained why he found several of Plaintiff's alleged impairments, including her migraine headaches and left shoulder degenerative joint disease, were non-severe impairments at step two. (R. 13). In any event, a step-two error is harmless when an ALJ finds there are other impairments that are severe and then proceeds to the next steps of the sequential evaluation. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation

sequence."). As noted herein, the ALJ determined Plaintiff had several other severe impairments and proceeded with the sequential evaluation. (R. 14).

Nevertheless, when assessing Plaintiff's RFC, the ALJ must consider the functional impact of Plaintiff's non-severe impairments in the RFC. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). While the ALJ states he considered "all of [Plaintiff's] medically determinable impairments [in the RFC], including those that are not severe" (R. 14), the Court must still determine if he did so.

**A. Migraine Headaches**

Plaintiff argues the RFC is unsupported by substantial evidence because the ALJ failed to include certain functional limitations associated with her migraine headaches based upon her symptoms of light sensitivity, nausea, and vomiting. (Docket No. 10 at 10, citing R. 56, 332, 968). She contends that such symptoms "directly affect [her] ability to tolerate ordinary workplace lighting and maintain regular attendance" while also affecting her time off task. *Id.* She maintains that when questioned about such limitations, the VE testified that "the absenteeism and time off task required to accommodate [Plaintiff's] migraines would not be tolerated in competitive employment." *Id.*

A review of the ALJ's decision shows that he considered Plaintiff's migraine headaches when assessing the RFC. Specifically, he acknowledged Plaintiff sought occasional treatment for her migraine headaches, but he determined her migraines "were not of the frequency or intensity longitudinally to be considered severe." (R. 24, citing R. 473-524, 573-79, 612-33, 706-842, 989-99, 1097-1154, 1191-1210, 1213-1389, 1440-42, 1474-1507, 1508-13). Additionally, he noted Plaintiff's testimony that she had only one migraine headache per month. (R. 24, 56). Further, he

concluded that the RFC accounted for functional limitations of her migraine headaches "considered singly and in combination" but that "none of her nonsevere impairments in-and-of themselves necessitate[d] additional functional limitations." (R. 25). Thus, the ALJ not only considered Plaintiff's migraine headaches, but he explained why he did not include additional limitations in the RFC.

**B. Left Shoulder Degenerative Joint Disease**

Plaintiff also maintains that the ALJ failed to include a reaching limitation in the RFC associated with her left shoulder impairment. (Docket No. 10 at 10-11). As support, Plaintiff alleges that she suffers from pain and muscle spasms in her left shoulder and has trouble reaching. *Id.* at 9-10.

The ALJ's decision shows that he discussed the record evidence in detail, noting that the RFC assessment accounted for functional limitations associated with her non-severe left shoulder impairment and that the impairment did not warrant additional functional limitations. (R. 25). Moreover, he limited Plaintiff to light work with lifting and carrying restrictions and additional postural, manipulative, and environmental limitations. (R. 24). Although Plaintiff cites medical evidence in support of her argument for a limitation in reaching (Docket No. 10 at 9), a review of the cited medical records reveals that many of them pre-date when she stopped working and none of them include a reaching limitation. (R. 447, 559, 588, 631, 950, 957, 970, 1114, 1133, 1242, 1341-43, 1438, 1505). Thus, Plaintiff cites no objective evidence suggesting she is more limited in her reaching ability than indicated in the RFC. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 650 (10th Cir. 2016) ("Clearly, an ALJ does [not] commit error by omitting limitations not supported by the record."); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) ("Because such

a limitation has no support in the record, the ALJ was not required to consider near-vision difficulties in determining Mr. Arles's RFC[.]").

A review of the decision reveals that the ALJ considered the evidence and presented a hypothetical question to the VE which included those physical limitations he adopted in the RFC (R. 63-66); thus, there is no step-five error. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for the denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Finding otherwise would result in the Court's reweighing of the evidence, which it cannot do. *See Casias*, 933 F.2d at 800. Accordingly, the Court finds no error in the ALJ's treatment of Plaintiff's migraine headaches and left shoulder impairment in the RFC assessment.

**The ALJ's Evaluation of Plaintiff's Symptoms**

When evaluating a claimant's symptoms, the ALJ uses a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7-*8.

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence he relies on in evaluating the [consistency of the claimant's subjective complaints],' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012), quoting *Qualls*, 206 F.3d at 1372.

Plaintiff argues that the ALJ's evaluation of her subjective symptoms was deficient because the ALJ failed to "identify evidence that meaningfully contradicts [her] allegations" while instead relying "on a perceived lack of objective medical support and selective citations to the record, [and] omitting substantial qualifying and contradictory evidence." (Docket No. 10 at 12). Plaintiff also contends that the ALJ selectively relied upon her ability to perform certain activities of daily living, without accounting for evidence demonstrating that her pain affected such ability. *Id.* at 12-13. As an example, Plaintiff points to the ALJ's mischaracterization of her driving ability. *Id.* at 14. Defendant counters that the ALJ's symptom evaluation is sufficient, as the ALJ considered Plaintiff's treatment and its effectiveness, objective findings, and her activities. (Docket No. 16 at 5-8). He asserts that the Court should decline to reweigh the evidence. *Id.*

In evaluating Plaintiff's subjective complaints, the ALJ outlined the two-step process set forth in SSR 16-3p and the requirements of 20 C.F.R. § 404.1529. (R. 18). His evaluation included consideration of Plaintiff's hearing testimony (R. 19, 43-68), third-party statements (R. 25, 341-48, 556-70), and the medical evidence in the record (R. 18-25). He determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged

symptoms[,]" but Plaintiff's subjective statements were "not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 19). Specifically, the ALJ noted that Plaintiff's allegations and testimony were "not entirely consistent with the diagnostic studies, the medical source reports, the objective clinical findings, and other statements [Plaintiff] has made, including statements of symptoms and statements as to the efficacy of her treatment." *Id.* (R. 19).

The ALJ acknowledged that Plaintiff's rheumatology records substantiated her testimony that she stopped working due to "unremitting pain" as they showed she was unable to sit at her desk all day long. (R. 19, 23, 558, 610). However, he also addressed evidence from April and May 2023 that Plaintiff's pain had significantly improved with rheumatology treatment and pain management and detailed her reports that she was able to perform activities of daily living, including shopping, driving, cooking, cleaning, and sweeping. (R. 20, 23, 740). Plaintiff also indicated that she could sit for prolonged periods, had enrolled in summer classes, and was able to take longer walks for exercise. (R. 20, 23, 579, 740). The ALJ considered Plaintiff's later complaints of difficulty sitting but noted that pain management records showed she was able to meet her goal of being able to sit longer and stand up from a chair with less back pain in August 2024, after receiving bilateral cluneal nerve blocks. (R. 20, 23, 1191, 1197). Plaintiff was not pain free, but she indicated her pain was at a tolerable level with treatment. (R. 21-23, 1220, 1231, 1242, 1251, 1261, 1289). The ALJ specifically addressed Plaintiff's testimony "that her mother drives her and that she must lie down in the back of the SUV," but he also noted her contrary reports that she could drive. (R. 20-23, 719, 1220, 1231, 1242, 1251, 1261).

Additionally, the ALJ discussed that Plaintiff exhibited "mildly antalgic gait on one occasion," but on other occasions her gait was described as normal with no motor impairment of the lower extremities. (R. 19, 21-22, 609, 1101, 1118, 1130, 1137, 1207, 1239, 1245, 1249).

Moreover, he noted Plaintiff's report in August 2024 that she did not do housework because of back pain but then the next month she reported doing well with pain medication, and although painful, her lumbar spine exhibited a full range of motion. (R. 24, 1213, 1508). Further, when considering Plaintiff's complaints of "exacerbated symptoms," the ALJ relied on specific examples from the record evidence and determined that "the continued overall stable objective examination findings d[id] not substantiate a longitudinal declination in [Plaintiff's] reported functioning[,]" as the evidence demonstrated that Plaintiff "rarely, if ever, was noted to be in acute or apparent distress, even during reported flare-ups." (R. 21-22, 23-24, 1228-29, 1239, 1245, 1249, 1254).

The Court finds that in analyzing Plaintiff's subjective complaints, the ALJ clearly considered Plaintiff's capacity to perform activities of daily living; the intensity of her pain and other symptoms; and her treatment and its effectiveness. (R. 19-25); *see also* 20 C.F.R. § 404.1529(c)(3). He addressed Plaintiff's subjective statements and set forth the specific evidence relied upon in his evaluation. *See Keyes-Zachary*, 695 F.3d at 1167, quoting *Qualls*, 206 F.3d at 1372. Thus, the Court finds no error, as the ALJ's decision allows for meaningful review in satisfaction of SSR 16-3p.

**Conclusion**

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 28th day of August, 2026.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT